May it please the Court. Laura Myron for the United States. I'd like to reserve five minutes for rebuttal. There are two issues in this case, but with the Court's indulgence, I'd like to start briefly with some factual background that I think is helpful to framing the legal questions before the Court. Prior to 2005, the Army was using Army cooks in the dining facilities that are at issue in this case at Schofield Barracks. In 2006, with the increase of personnel sent overseas, many personnel from that facility were sent abroad, and the Army switched to a full food services contract, which comprises the full operation of the dining facilities and was provided with priority to a Randolph Shepard Act vendor. In 2016, at the conclusion of the prior contract, with the return of personnel from overseas, the Army made the decision to send those personnel back to the dining facilities and to use the support of a custodial and janitorial services contract known as a DFA services contract. A plaintiff contends that, number one, that contract should have been subject to Randolph Shepard Act priority, and number two, that the decision to use a more limited contract and to operate the facility using Army cooks should have been reviewed by the Secretary of Education pursuant to Section 107B of the statute. I'd like to start with the second issue first. The text of the statute in 107B provides that any limitation on the placement or operation of a vending facility based on the finding that such placement or operation would adversely affect the interests of the United States shall be fully justified to the Secretary of Education. What you have here is not a limitation within the meaning of this provision because it's not a limitation on the placement of the dining facility, presumably the facilities remain in the same location they have always been, nor is it a limitation on the operation of that facility. The hours are the same, the products provided are the same, et cetera. And this is not the kind of decision that Congress would have intended the Secretary of Education to review. Plaintiff would have you read into the text of the statute the phrase, buy a Randolph-Shepard Act vendor, which simply isn't there. The legislative history demonstrates that Congress was trying to get at the sort of arbitrary and harmful limitations like prohibiting the sale of certain products or selecting a disadvantageous location or limiting the hours or the amount of income that can be generated by a facility. Not trying to provide the Secretary of Education the authority to review any decision that might have a downstream impact on the economic opportunities provided to a Randolph-Shepard Act vendor. Now, plaintiff's theory is that the court need not worry about the fact that they've effectively turned this provision into a one-way ratchet so that whenever the Army switches to a full food services contract, there's a role for the Secretary of Education in its decision to switch back because surely the Secretary of Education will always find it in the interest of the United States to rely on an Army-operated model. But there's no guarantee that that's how this will proceed. And the question before the court is whether, as a matter of law, the Secretary of Education shall have the authority to make a binding determination that the Army must renew an expired contract for full food services at this facility. There's no indication in plaintiff's position that they would identify any decision with ramifications for Randolph-Shepard Act vendors as a limitation. They haven't even been willing to dispute that the closure of a military facility would not qualify as a limitation within the meaning of this provision. And we are asking the court to apply the text of the statute as written and to conclude that this decision to send Army cooks back into the kitchen at military dining facilities is not a limitation on the placement or operation of that facility. If the court has no questions on that provision, I'd be happy to touch on the second issue. I did have a question just in terms of the order which we have to decide in this case, and I'm going to be asking the opposing counsel the same question. All right, so let me make sure. There are a lot of acronyms in this case. So I want to make sure I have the correct acronyms. Okay, so issue one in a sense is what the Randolph-Shepard Act does or does not do here. And then the second question, as I understand it, is whether the Randolph-Shepard Act applies to these DFA contracts. Yes, Your Honor. Okay, so as to the first issue, if we were to decide, and I'm not saying we are. I'm just trying to understand how the questions are linked. If we were to decide that the Army, in fact, did violate the RSA review requirement, do we need to answer? I mean, should we answer the second question? Yes, Your Honor. The questions do not need to be decided together. I mean, you certainly, if you concluded that this was a limitation within the meaning of the statute, that wouldn't answer the question as to whether or not this contract was appropriately bid out with subject to Randolph-Shepard Act priority or not. And the question of whether the contract is properly separate to Randolph-Shepard Act priority or not doesn't turn on whether or not this is a limitation within the meaning of the statute. And the reason I ask is I think the Fourth Circuit addressed a very similar issue, unpublished. But in that case, they only answered one question, and they said we should not move on to the second question. I think there's a footnote 10 in that opinion. Yes, that's correct. That's how they resolved the case. We don't think it's necessary for you to do that. Resolving the limitation question doesn't answer the question of whether the contract is properly subject to Randolph-Shepard Act priority. We contend that the district court's answer with regard to that question is correct and that you should affirm. And nothing in the statute would render that decision incorrect. There's nothing in whether or not this is a limitation within the meaning of 107B that answers whether or not it's for the operation of a vending facility. And I guess what I'm trying to say is that if the answer to the first question is that there was a violation, then they would have to go back and decide whether or not it was a proper decision or not in the first place, right? And then would we necessarily have to get to the second question? I'm just trying to make sure if we answer the first question a certain way, it seems like the answer to the second question would be advisory because we don't know what the answer to the first question is if we're sending it back. Well, not necessarily, Your Honor. I mean, I don't want to speak for plaintiff's counsel, but I presume if you were to conclude that the Randolph-Shepard Act priority did apply to the contract, that the sort of switch from a contract where there's full food services operation to a more limited contract under the dining facility attending contract, they would contend that that's also a limitation. And so it really doesn't answer the question as to whether or not the priority is properly applied to the contract. And the contract at issue here is concluded in 2022, so it would be almost concluded. There would be presumably another contract opportunity starting in 2022. And these are questions of law. You're not saying that. No, Your Honor. These are questions of law, and so they would have consequences beyond just the contract at issue here. And so we're asking the court to decide both of the questions for that reason going forward. Okay. And I just want to make, because the Fifth Circuit did answer both questions. The Fourth Circuit didn't and specifically said we disagree with the Fifth Circuit that we should answer the second question. I just want to get both parties' views on what we should be doing. Respectfully, Your Honor, the Fifth Circuit only answered the second question, the question of whether or not the operation of the dining facility or whether or not the contract should have been subject to Randolph-Chaparrack priority. The question of the review requirement was not before the Court of Appeals in that case. Well, let me ask you this. Do you think as the Fourth Circuit's approach where they did not answer the second question, do you think that was wrong? Do you think they should have? Certainly it would be within the court's discretion to decide only the first issue and to send it back here. We don't think that you should do that. As I said, there are consequences going forward for contracts that would arise in the future. But I don't know that it was a legal error to do it that way. It was kind of an unusual thing where in the Mem Dispo for the Fourth Circuit they kind of said there's this other thing, but we're not going to address it, so I just want to get your take on it. Yes, Your Honor, and I think as a question of statutory interpretation, both provisions include the phrase operation of a vending facility, but as a legal matter, the decision on each issue doesn't affect the other, and so we would contend that you should decide them both today. Thank you. I want to follow up on that if Judge Owens has finished with his line of inquiry. So if we decide that the advanced review requirement needs to be complied with in this case, given that you said the contract is expired, the VFA contract is expiring this year, wouldn't the answer to the advanced review requirement process affect how the government handles future VFA contracts or no? I'm still trying to figure out the same issue. I know it's discretionary that we can answer both questions, but if we were to say that the advanced review requirement needs to be complied with in this case, depending on how the Secretary handles that question, that may impact what you decide in the future in terms of new contracts. So I'm wondering, too, whether we even need to reach the second question in light of the foster of this case. Your Honor, and I think I was trying to say this in response to Judge Owens' question, perhaps I wasn't articulating it clearly, but if you were to decide the review requirement did apply for the next contract, there would be an obligation, presumably, for the Secretary to consider whether or not this is justified. It would, I would note, be a binding determination on the Army. So if the Secretary, we don't think there's any reason to think the Secretary would do this, but if the Secretary would conclude that, you know, it's in the interest of the United States to have a full food service contract operated by a Randolph Shepard Act vendor instead of the Army's use of its own personnel, that determination would be binding. But then there would be a second question before the Army after it had completed that review process as to whether or not the DFA service contract would be subject to Randolph Shepard Act priority or not. And there are numerous other statutes that govern how the military and other agencies bid out federal contracts, what preferences and priorities apply. So if it's not the Randolph Shepard Act priority, in this case it was a small business set aside, but there are other provisions that would direct the Army to bid the contract out subject to different preferences. And so the decision would still need to be made as to whether Randolph Shepard Act priority applies or not. And if I could briefly touch on the second issue. Again, the text of the statute is fairly clear that priority shall be authorized, priority shall be given to authorize, excuse me, priority shall be given to operate vending facilities, and there's been some question about what it means to operate. But also, I think more importantly, what the district court got right in this case, and perhaps the Fifth Circuit got wrong in Texas Workforce Commission, is that the thing that shall be operated is the vending facility. And so when you're talking about operation, as this court has understood it, as the Supreme Court has understood it, to involve a managerial and administrative function, some authority and oversight shall be of the facility as a whole. It's not, certainly we agree that the DFA services contract is for functions attendant to the operation of a facility, but that's not what the statute provides. The statute provides that priority shall be given for the operation of the facility. And so plaintiff would have you read into the statute a phrase like attendant to, pertaining to, related to the operation of a dining facility that simply isn't there. If the court has no further questions, I'll reserve time for rebuttal. All right. Thank you, counsel. Thank you. Mr. Goelner. Good morning, Your Honors. May it please the Court, Ryan Goelner for the Applee Cross Appellant, State of Hawaii, Ho'opono. May I reserve, although somewhat unconventional, two minutes of my time for rebuttal regarding solely the cross appeal issue? Sure, that's fine. Thank you, Your Honor. And I will respond to the government's arguments regarding its appeal on the review requirement issue, but I first want to explain why the Randolph Shepard Act's priority should have been applied to the dining facility contract at issue here, which presents purely an issue of statutory interpretation. The statute's use of operate and operation is ambiguous, but Congress wrote the law broadly enough to encompass dining facility attendant contracts like the one at issue. The federal government and Ho'opono have proposed different interpretations of the term. The government's doesn't work because it arbitrarily picks among definitions and actually is the one that adds words to the statute that limit the law's application to suit the Army's desire. Contrary to the express purpose of the statute, it limits employment opportunities for blind people. Ho'opono's reading, on the other hand, is in keeping with well-established modes of statutory interpretation. It's based on the statute's text, and it supports the law's remedial purpose to promote the economic advancement of blind vendors. And our interpretation is based on the comprehensive scheme evidenced in the statute, the Secretary of Education's implementing regulations, and promoting employment for blind people. It's also consistent with what the Fifth Circuit has already held. The dining facility attendant contract here provides for services like clean pots and pans, sanitary forks and knives, empty garbage cans. Without those things, a cafeteria could not possibly be said to operate. So a contract that provides for the provision of those services is one for the operation of that cafeteria, and so one to which the Randolph-Shepard Act's priority for blind vendors should apply. It's important to remember in this case there are a few things not in dispute. No one disputes that Schofield Barracks is a vending facility that the Army is subject to the Randolph-Shepard Act, or that it's the Secretary of Education, not the Department of Defense or the Army, that has the exclusive authority to implement the law. And the Army concedes that the prior contract for Schofield, the one for unified full food service and dining facility custodial services, which included all of the same services now separated out in the dining facility attendant contract, the government concedes that contract was for the operation of the cafeteria. So the problem posed by the government's interpretation of the law is why those same cleaning duties were part of the cafeteria's operation when they were part of that unified scope contract and suddenly lost that status when the Army decided to separate them out into the dining facility attendant contract. The government has characterized the operation of the cafeteria that would meet the Randolph-Shepard Act's, satisfy its criteria and require the priority to be applied as the, quote, full operation of the cafeteria. But that necessarily implies that there is some form of operation of the cafeteria less than full, but the government doesn't answer the question as to what that operation would be. They don't say, but there has to be some other form of operation less than full that would still constitute the operation of the facility. And respectfully, we submit, Your Honors, that's a dining facility attendant contract without which the cafeteria could not operate. The government's reading of the statute appears nowhere in the terms, and the government adds words like entire or full or complete or executive control. Those are the adjectives the government wants to add to the statute, which Congress very well could have put in the statute if it wanted to, but it did not. There's no limitations on what type of operations are required for a blind vendor to perform in order to operate the cafeteria. And so the government isn't wrong that executive control or food service are part of a cafeteria's operations, but the problem is its exclusionary definition arbitrarily picks between definitions for the term and fails to see that there are other aspects of a cafeteria's operation. The entire way of viewing the statute is based on the Army's desires and its operational mechanisms, which appear nowhere in the statute. Again, full food service and dining facility attendant contracts are creations of the Army, and the Army has no administrative or interpretative authority over the application and implementation of the Randolph-Shepard Act, and it also has the upshot of excluding the blind vendor from employment opportunities, which is completely contrary to Congress's purpose. So rather than pick and choose arbitrarily amongst definitions, we ask the court to employ recognized tools of statutory interpretation. Operation can mean different things in different contexts, different times and places. Even the government's Crawford case law, the Yates case in the Supreme Court, indicates that. We look at the specific context of the language in the statute. We look at the broader context of the statute as a whole. A cafeteria is a complex facility with a lot of different things contributing to its operation, lots of functions occurring simultaneously that allow for the provision of food. Our model and our definition of the term operation is consistent with the language of the statute. It accounts for the different categories of those services and those duties involved in the operation of a cafeteria. And again, it furthers Congress's express purpose in the statute to expand, not decrease, economic opportunity for blind persons. At best, if you believe the government's interpretation of the statute is plausible, it merely emphasizes the point that the statute is ambiguous, and so we should use those traditional tools of interpretation, such as other parts of the statute, where a vending facility is defined to include auxiliary equipment the secretary may by regulation prescribe, or that the vending of services is contemplated by Congress in the Randolph-Shepard Act by blind vendors. That sanitary practices are one of the criteria the secretary has established for judging contract solicitations that would be subject to the Randolph-Shepard Act. That contracts pertaining to the operation of a dining facility should be negotiated subject to the Randolph-Shepard Act. And so I just wish to clarify for the court, we're not asking the court to add those words to the statute. We're asking the court to read the text of the Randolph-Shepard Act, the entire text, and then look at the regulations the secretary has promulgated in conjunction with Congress's express purpose to expand increased employment opportunities for blind vendors and decide that, as the secretary has said in Regulation 395.33a, that the priority should be applied to provide, quote, maximum employment for blind vendors to the greatest extent possible. The Fifth Circuit in Texas workforce case has already held as much. There's no reason to deviate from that case here. The case is on point and persuasive. The Army has not been able to distinguish it. I don't even think, I'm sorry, the federal government has not even really tried to distinguish the facts of that case because it's on all fours with this one. In light of those things that I just went through, the statutory purpose, the overall text, the regulations, the Fifth Circuit in the Texas workforce case decided that the Randolph-Shepard Act priority could apply to dining facility attendant contracts and did, in fact, apply to that dining facility attendant contract at issue. And it also looked at the Secretary of Education's letter, the 2018 DeMoss letter, which held that, which interpreted the Randolph-Shepard Act that even non-food preparation functions, like administrative and sanitation functions, just like the ones we have in the dining facility attendant contract here, are capable of being part of the operation of a cafeteria. And so, Your Honors, this is a line-drawing case. We're not asking the court to announce the all-purpose test or to apply only one, as I said, arbitrarily chosen definition of operate. I believe my colleague referred to, you know, this court having interpreted the word, or the Supreme Court having interpreted the word. But with respect to my colleague, the court did that under other laws and other contexts for other purposes. And the Randolph-Shepard Act is just different. We're lucky enough here to have Congress's expressed purpose in the very first section of the statute that it should be, the statute is designed to promote remunerative opportunities, employment, and the economic advancement of blind people. We ask that the court use that as a guiding principle in looking at the statute. I think another way to look at it is if you take the services in the dining facility attendant contract and you were to take all those away from the cafeteria, imagine the cafeteria without any of the sweeping, mopping, pot cleaning, forks and knives, empty garbage cans. So take all that away from the cafeteria. Could the cafeteria be said to, quote, operate? I think the answer is very clearly no. Nobody would look at a cafeteria with garbage piled high, no pots to cook in, no clean forks and knives to eat with, you know, dirty plates everywhere, as an operating cafeteria. I think you could do that for about one day, and then the cafeteria would cease to operate. So, therefore, the duties provided in the dining facility attendant contract are for the operation of a cafeteria. We just want the court to read the Randolph-Shepard Act, its purpose, the implementing regulations, the secretary's letter, as the Fifth Circuit has already done, and hold that the Randolph-Shepard Act can apply to dining facility attendant contracts, and to look at the duties called for by the contract here, the fact that they're necessary to part of the cafeteria's operation, and so the Randolph-Shepard Act priority should have been applied to the dining facility attendant contract at issue. The Army was wrong not to apply that, and the district court was wrong to conclude otherwise. Counsel, at some point, can you address the question I asked? And I can frame it again if it would help. You know, the order of questions, it seems to me there are two questions in this case, and do we have to answer both? Should we answer both? If we find that the Army, in fact, violated the Randolph-Shepard Act, which requires the advance approval of the secretary, and send it back and say you've got to look at this again, do we reach the issue that you've been talking about here? Yes, Your Honor, I do think the court should still reach that issue, and there's a couple of reasons for that. One is the Army violated both provisions of the statute. I mean, the simple fact that the harm we have here was complete ignoring the review requirement and then bidding out the dining facility attendant contract without the required Randolph-Shepard Act priority. So, I mean, in essence, the Army, you know, flaunted both aspects of the statute. So both are concrete harms that are properly before the court that harmed Ho'opono, and as to which Ho'opono is entitled to a declaration and an opinion, we respectfully submit from this court saying, yes, that it not only violated the Randolph-Shepard Act to solicit that without the priority, but the split in scope and removal of the priority also violated the review requirement. Counsel, what does the advance review by the secretary of the Department of Education entail? I mean, could they decide the second question and say this is a limitation and therefore we're going to prohibit the switch? Yes, Your Honor. If I'm understanding the question correctly, the review requires a written justification for the reason for the limitation be submitted to the secretary of education, specifically the Rehabilitative Services Administration is charged with overseeing the law, and then the secretary gets to decide in the first instance whether or not the limitation should be permitted. So the issue of whether the Randolph-Shepard Act priority should then apply to the dining facility attendant contract is not decided in that same sort of decision. The decision submitted to the secretary is whether the limitation is permissible. And the problem, Your Honor, is that the Army skipped that step. Congress has very clearly mandated that any limitation, just as the Fourth Circuit held in the Kansas case, any limitation requires review by the secretary, and the Army just decided not to pursue that. But the problem is we have a civilian-controlled military. We have a statute, a very clear statute, passed by Congress with explicit instructions as to how all federal agencies should proceed in this instance, including the Army, and the Army ignored that requirement. And to return to Judge Owen's question, if I may, as a practical matter, if the court were to decide to affirm, as we ask, the district court's decision that the Army should have submitted the limitation in advance to the secretary for review, just sending it back for the secretary to do that really isn't enough here, as a practical matter, Your Honor. For one, if the Army agrees with the Secretary of Education agrees with the Army, as my colleague presumes the secretary would, it leaves us with the same question. Does the Randolph-Shepard Act priority apply to that segregated contract that the Army solicited? And even if the secretary were to decide the limitation was improper and not approve that, the problem is the Army has already gotten to solicit the contract, again, without the Randolph-Shepard Act priority, and essentially operate under that unlawfully procured contract for nearly five years. So, again, that's why I believe we're entitled to a declaration and an opinion as to both counts, not just that the Army violated the review requirement, but let's just assume that the limitation would have been allowed. We're still left with the Randolph-Shepard, the lack of application of the Randolph-Shepard Act's priority, which should have been applied in this case. And so that's the declaration, the relief, the opinion, as I said, that we're asking here. In other words, if the court permits the Army's manipulation of the Randolph-Shepard Act in this case, and skipping the review requirement, not applying the priority, if it permits this sort of slice-and-dice way around the Randolph-Shepard Act, then the violations of the act will be perpetuated, as no shortage of litigation in the last few years in this area has demonstrated. I also want to do, returning to the limitation requirement, again, we're only asking the court to apply the words that Congress wrote. It says any limitation, as the Fourth Circuit noted. A limit is something that restrains, bounds, or confines. Splitting the cafeteria contract into food service, custodial duties, and then taking away the Randolph-Shepard Act priority from the custodial duties contract, that's something that restrained, bounded, confined Ho'opono because it completely eliminated Ho'opono's ability and his blind vendor ability to even bid on the contract. I thought it was telling when my colleague referred to, I believe she said, when the Army went from a full food service contract to the, quote, more limited DFA contract. I think counsel's concession is telling because the DFA contract is more limited. We had a unified contract for a single scope. The Army split that in two. The limited contract was a limitation that should have been reviewed by the secretary. So there's no difference between these direct restrictions or indirect restrictions with a downstream effect. The point is they both limit a blind vendor's opportunities to bid on a contract for which Congress has established the blind vendor should receive priority. The point is to conduct the review, not skip over it as the Army wants to. It's not up to the Army's discretion. But as I said, the federal government's arguments flip the review requirement on its head and let the Army decide whether the Department of Education should review the Army's actions. It seems to be the exception that would swallow the rule. And to address the other example my colleague gave regarding base closure, Ho'opono has never conceded that the limitation would reach a base closure issue, and that's because Congress has already spoken to base closure issues. There's a completely separate statute under Title X of the federal code that lays out a very detailed process as to how bases can be closed. It requires notification from the Department of Defense to the chairs of Senate and House committees. It requires a potential review even by the Secretary of Transportation, environmental laws, potentially by the president. And so Congress has already spoken to the base closure issue. It has nothing to do with the Randolph-Shepard Act and doesn't in no way has Ho'opono offered that base closures would somehow be subject to Randolph-Shepard Act because Congress has separately spoken to that issue. And again, I just want to emphasize that this is a line drawing case, Your Honors. We're not asking the court to decide every conceivable limitation on the Randolph-Shepard Act, every conceivable limitation that could be subject to the Secretary's review. We're just asking the court to look at the limitation the Army performed here, segregating the full food service and dining facility attendance services and the removal of the Randolph-Shepard Act priority. The complete elimination of an opportunity for a blind vendor was a limitation that should have been reviewed, submitted to, reviewed by the Secretary of Education. And the Army failed to request the review, let alone obtain permission to do it, and the district court properly held as much. So we ask the court to affirm the district court's holding in that respect. And unless there are more questions, I'll reserve the balance of my time. All right. Thank you, counsel. Thank you. I'd like to start again with the limitation question. As opposing counsel has suggested, this is a limitation within the meaning of the provision because it is a limitation on the economic opportunities available to the blind vendor. But that's not what the statute provides. The statute provides that the limitation shall be on the placement or operation of a vending facility. Congress made clear in the legislative history that what it was looking at is things like, you can operate this facility, but if you only sell certain things, or you can only do it for certain hours, or you must do it in this particular location. It did not intend to reach every decision that would have a downstream impact on the economic opportunities available to blind vendors. And counsel has suggested many times that Congress, in this statute, intended to enlarge the opportunities available for blind people. And we are certainly not contesting that that was the purpose here. But there are numerous other statutes, as I've mentioned, that provide for other priorities and preferences for various contracts and other kinds of services that are provided, veteran-owned businesses, small businesses, other priorities for businesses that employ persons with intellectual and physical disabilities. And we ask the Court not to read the statute beyond what Congress wrote in the interest of serving the purpose of providing opportunity for blind people. I would also note that plaintiff has agreed that the limitation decision would be binding on the Department of Defense, that this provision, if read as suggested, would give the Secretary of Education the ability to tell the Department of Defense that it must renew an expiring contract for full food services operation, and it could not instead go back to the model where the Army was operating the dining facility. On the first issue with regard to operation of the dining facility, plaintiff has suggested that the question before this Court turns on the ambiguity of the phrase operation. I would contest that. The ambiguity here, the question of how the statute applies and whether or not it applies to this contract, turns on whether the vendor is operating the dining facility. I think it defies common sense to think that somebody who comes in and says, you know, I sweep the floors and bust the tables, if that person said I'm operating a restaurant, that's not how the term operation is normally used in plain language. That interpretation would align with how the Supreme Court has understood the term operation of a facility in best foods and also how this Court has understood it in Lentini. I agree that this is a line-drawing case, and I would submit that we are asking you to say not that there are no contracts that would be for the operation of a dining facility that are less than the full operation of the facility, but only that this contract, which provides for sweeping, mopping, busing tables, is not for the operation of the facility and is not subject to Randolph-Shepard Act priority and is instead properly bid out under the various other preferences and priorities that Congress has established. It's Congress's job to balance these various things, and they have done so by providing, in different statutes, different priorities and preferences under different circumstances. What you have here is not the operation of a dining facility within the meaning of the Randolph-Shepard Act, nor is it a limitation on the placement or the operation of that facility, and thus the Secretary of Education is not the appropriate decision-maker for whether the Army should be able to send its cooks back into Army dining facilities at the conclusion of a prior contract. If the Court has no further questions. Thank you. Thank you, Counsel. Thank you, Your Honors. I just wish to make a couple of quick points in closing. The one is that other statutes are not at issue here. They don't bear on the interpretation of the Randolph-Shepard Act. The Randolph-Shepard Act is somewhat unique, but Congress has spoken very clearly to what it is, what its purpose is, and what should be done here with respect to contracts for the operation of a dining facility. With respect to weighing the Army versus Congress's choices, that's not up to the Army. Congress has made the policy decision already that the burdens on the Army and any other federal agency of the Randolph-Shepard Act should be applied. It's not up to us, frankly this Court or any federal agency, to question the wisdom of Congress's policy choices in that respect. And then, again, the government relies on a circular definition of the term operate, arbitrarily choosing among definitions to say that somebody who is sweeping, mopping, and doing all these other duties can't be part of the operation of the cafeteria. Again, besides just choosing certain definitions and ignoring the other ones, this isn't just one person sweeping the floors. This is a contract that's going to require 40 to 50 people to do custodial duties, everything from cleaning dishes, cleaning forks and knives, pots and pans to cook in, scrubbing, clean floors, empty trash cans, all things that are necessary to a cafeteria's successful operation. And this is a huge economic opportunity for a blind vendor to earn a living and make his livelihood as Congress intended in the statute. The Best Foods case and other cases I pointed out are an opposite. They dealt with circular pollution statutes, attaching liability to other entities, which, as the Fifth Circuit held, involves some level of control. So, of course, that's what Congress was concerned with and the court was concerned with in interpreting those statutes. And so, Your Honor, in the native language, ho'opono means to make things right. And we just asked the court to make things right here by affirming the district court's finding that the Army violated the limitation and review requirement and to reverse as to, on Ho'opono's cross-appeal, hold that the Randolph-Shepard Act can apply to dining facility attendant contracts and that it should have been applied to the dining facility contract at issue here. All right. Thank you, Your Honors. I thank both counsel for excellent arguments today. State of Hawaii v. U.S. Department of Education is submitted, and this session of the court is adjourned for today. Thank you. All rise.
judges: WARDLAW, NGUYEN, OWENS